IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



UNITED STATES OF AMERICA

VS.  CRIMINAL NO. 4:01cr8BN

BILLY D. COOPER
   a/k/a "Rabbit"
JAMES ERNEST FRYE, JR.
   a/k/a James E. Frye

### SECOND MOTION TO DISMISS THE DEATH PENALTY BECAUSE OF VINDICTIVE PROSECUTUION AND GOVERNMENT MISCONDUCT

The Defendant, James Ernest Frye, Jr., moves this Court to direct that this case cannot proceed as a death penalty case because of prosecutorial vindictiveness and misconduct, and in support would show:

1. The United States Attorney's office previously offered to let the Defendant Frye plead to two twenty year concurrent sentences to dispose of the case.

2. The Justice Department is seeking the death penalty in this case despite the fact that the shooter, co-defendant Cooper, did not receive the death penalty and despite its own arguments in Cooper's case that Cooper was the more culpable of the two.

3. As the Court is aware, the Court entered an order precluding the government from pursuing the death penalty because the government

misrepresented its intention to seek the death penalty, thereby causing Frye to waive his right to a speedy trial of the death penalty.

4. The Fifth Circuit reversed the case, suggesting that the defendant had an additional remedy for the government's misconduct which was to seek rehearing of the mitigation issue from the Justice Department.

5. Defendant has pursued that remedy, having requested the Justice Department reconsider its decision to seek the death penalty.

6. The Justice Department has refused to reconsider its decision or to grant Frye a hearing on the issue.

7. This is so despite a recommendation from the local United States Attorney that the death penalty is not an appropriate penalty in this case.

8. The Justice Department has repeatedly denied Frye a hearing to present mitigation evidence before the death penalty committee.

9. In fact, the government recently reindicted Frye for the death penalty without allowing him a hearing.

10. Defendant believes that the initial decision to seek the death penalty in this case is because the Defendant did not accept the plea offer.

11. The request for leave to pursue the death penalty is the result of prosecutorial vindictiveness against the Defendant for the exercise of his constitutional right to plead not guilty and request a trial,

12. Moreover, the continued decision to seek the death penalty is the result of prosecutorial vindictiveness because Defendant and his counsel accused and proved that Assistant United States Attorney, Peter Barrett, lied to the Court and counsel as found by this Court and afirmed by the Fifth Circuit as was his constitutional right.

13. Further support for prosecutorial vindictiveness can be found in the fact that in this district the Justice Department made the decision not to seek the death penalty in the case of USA v. Kathleen Nelson, et al, No. 3:03CrWs, In the Un8ited States District Court for the Southern District of Mississippi, a case which is in fact more egregious that the instant one. *See,* newspaper article attached as Exhibit A.

14. In that case, the Defendant killed a government witness and cut off the witness's head and hands.

15. Unlike Frye's case, the Defendant was alleged by the government to have been the actual killer.

16. Here, the government does not contend Frye was the shooter, and the deceased were not government witnesses but rather were drug dealers involved in buying drugs from Cooper.

17. Additional support for a finding of vindictive prosecution and governmental misconduct can be found in the repeated misrepresentations of

AUSA Peter Barrett regarding discovery and other matters which Frye has detailed at previous hearings and in previous motions. Barrett, for example, repeatedly failed to respond to discovery orders and requests from defense counsel and concealed exculpatory evidence, including, but not limited to the fact that Frye and Cooper were working as a government informants at the time of the alleged offenses and evidence supporting the notion that Frye was not the shooter.

## SUPPORTING MEMORANDUM

The Due Process Clause of the Fourteenth Amendment guarantees against judicial and prosecutorial vindictiveness. Thus, a defendant may not be penalized by the imposition of a harsher sentence simply for exercising a right, for example, to appeal. *North Carolina v. Pearce*, 395 U.S. 711, 723-26 (1969). Similarly, a prosecutor cannot increase the charges against a defendant in retaliation for the defendant's assertion of a statutory right. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (extending the rule in *Pearce* to protect the accused against prosecutorial vindictiveness). It would likewise be unconstitutional for the prosecution to increase the charges in retaliation against the defendant for asserting his right to a trial or for defending himself by alleging and proving government misconduct.

No actual showing of malice or retaliatory motive is necessary to assert a vindictive prosecution claim. *Blackledge*, 417 U.S. at 28; *see also United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980). Rather, vindictiveness will be presumed when the circumstances surrounding the prosecutorial decision at issue create the appearance of vindictiveness.[1] *See United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981); *see also United State v. Griffin*, 617 F.2d 1342, 1347 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980) (mere appearance of vindictiveness may give rise to presumption sufficient to establish due process violation); *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) ("it is the *appearance of vindictiveness* rather than *vindictiveness, in fact,* which controls") (emphasis in original). A presumption arises whenever "it reflects the very real likelihood of actual vindictiveness" on the part of the prosecution. *United States v. Martinez*, 785 F.2d 663, 668 (9th Cir. 1986) (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1167 (9th Cir. 1982)).

The circumstances surrounding the government's decision here clearly reflects the real likelihood of actual vindictiveness and thus gives rise

---

[1] The Supreme Court in *Pearce* recognized the extreme difficulty of showing the existence of an actual vindictive motive in an individual case. 395 U.S. at 726. Later, in *Blackledge*, the Court extended the holding regarding presumed vindictiveness to situations involving a likelihood of prosecutorial retaliation. *See* 417 U.S. at 27-28.

to a presumption of vindictiveness and willful misconduct. *See Blackledge*, 417 U.S. 27-28; *United States v. Shaw*, 655 F.2d 168, 171-72 (9th Cir. 1982) (appearance of vindictiveness shown by prosecutor increasing severity of charges after the defendant exercised a protected right); *Robison*, 644 F.2d at 1273 (stating it is the prosecution's "attempt or threat to 'up the ante' by bringing new or more serious charges in response to the exercise of protected rights that violates the due process guarantee"); *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir.), *cert. denied*, 434 U.S. 827 (1977) (constitutionally impermissible for government to up the ante to discourage defendant from exercising his right to change of venue).

While the prosecution may under certain circumstances increase the severity of the charges if the accused rejects a plea bargain, a crucial inquiry is whether the accused was aware of and knew the price of rejecting the bargain. *Ehl v. Estelle,* 656 F.2d 166, 170 (5th Cir. 1981). The government cannot make such a showing here.

Once the presumption of vindictiveness is raised, the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose. *Gallegos-Curiel,* 681 F.2d at 1167; *United States v. Thurnhuber*, 572 F.2d 1307, 1310 (9th Cir. 1977) (state has

a "heavy burden of proving that any increase in the severity of the alleged charges was not motivated by a vindictive motive") (quoting *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976) (footnote omitted)). Thus, the government must rebut the presumption. Defendant requests an evidentiary hearing. *See Adamson v. Ricketts*, 865 F.2d 1011, 1017-1020 (9th Cir. 1988) (evidentiary hearing ordered on petitioner's claim that reinstatement of death penalty prosecution after cooperating witness sought to "renegotiate" his deal was vindictive).

WHEREFORE, the Defendant requests that this Court grant an evidentiary hearing and upon hearing, that the Court dismiss the portion of the indictment seeking the death penalty.

> Respectfully submitted,
> JAMES ERNEST FRYE, JR.,
> DEFENDANT
>
> BY: _____
> ATTORNEY FOR DEFENDANT FRYE

## CERTIFICATE

I, the undersigned attorney for James Ernest Frye, Jr., do hereby certify that I have this date mailed by United States mail, postage prepaid, a true and correct copy of the above and foregoing motion to Jerry Rushing, Esq., AUSA, at 188 East Capitol Street, Suite 500, Jackson, MS 39201.

This, the 5th day of January, 2005.

_____
ATTORNEY FOR DEFENDANT FRYE

Cynthia A. Stewart, MSB#7894
Cynthia H. Speetjens, MSB#2408
222 North President Street, Suite 302
Jackson, Mississippi 39201
Telephone: (601) 968-9070
Facsimile: (601) 969-9075

**ATTORNEYS FOR JAMES ERNEST FRYE, JR.**



 **MISSISSIPPI NEWS**



Home   News   Entertainment   Classifieds   Cars   Careers   Real Estate   Archives   Subscribe   Customer Service   Shopping

Home | Mississippi News

71°F
Mostly Cloudy
Forecast

January 5, 2005

## Death penalty ruled out in mutilation case

- Three accused of killing witness in embezzlement trial

**By Jimmie E. Gates**
jgates@clarionledger.com

**News**
Sports
Obituaries
Business
E-Technology
Southern Style
Food
Home & Garden
Opinion
Columnists
Weather
**Entertainment**
Dating
**Contact Us**
**Customer Service**
**My clarionledger**
**Celebrations**
Space.com
USA Today
USA Weekend

The Madison County Herald
The Clinton News
The Rankin Ledger

Shopping
Cars
Careers
Classifieds
Top Jobs
Real Estate
Apartments
Subscribe

Online coupons
Online postcards
Online crossword

**Search**

● **Free search**
(previous 7 days)

○ **Paid archives**
(1999 — present)

Three people accused in the mutilation death of a main witness in a federal embezzlement case won't face the death penalty when they are tried later this year.

**What's next**
A May 16 tentative trial date is set for the defendants in the murder case before U.S. District Judge Henry T. Wingate.

The U.S. attorney's office in Jackson last year argued before the U.S. Department of Justice's death penalty review committee in Washington for the death penalty to be applied in the slaying of Clovis Reed, 51, of Canton.

Sisters Kathleen Nelson and Levon Edmond, both of Canton, and Roosevelt Walker, address not given, were charged with murder in a federal indictment handed down last year.

Asked Tuesday about the case, U.S. Assistant Attorney Harold Brittain said, "It was cleared through Washington as a nondeath-penalty case."

Reed's decapitated and handless body was found in a remote field near Crystal Springs in Simpson County in 2003.

Reed was killed five days before she was scheduled to testify in a federal embezzlement case against Nelson and Edmond.

Authorities have said Edmond and Nelson embezzled a $50,000 black farmers settlement check intended for Reed. Both earlier pleaded innocent to that charge.

A trial is tentatively scheduled for May 16 before U.S. District Judge Henry T. Wingate.

Reed's niece, Sarrah Travis, said the defendants should face the death penalty.

"I don't know why anyone would have wanted to harm her," Travis said of Reed.

U.S. Department of Justice spokesman John Nowacki said the department doesn't discuss its decision-making process in capital cases. He said the final decision is made by the attorney general on whether to seek the death penalty.

Edmond's attorney, Larry Yarbrough, said the defendants' attorney went to Washington to argue before the committee against the death penalty.

Kathy Nester, an attorney for Nelson, said, "We strongly believe it wasn't a case for the death penalty." Neither she nor Yarbrough would elaborate about their reasons.

There has been one federal death penalty case to come to trial in Mississippi in recent memory.

In 2002, a federal jury decided against death for Billy Cooper, who was convicted of killing a Laurel teenager and her boyfriend in 1999 and mutilating their bodies. Cooper was sentenced to life in prison.

Send this link to a friend.    Subscribe to The Clarion-Ledger.

     

Copyright © 2005, The Clarion-Ledger.
Use of this site signifies your agreement to the Terms of Service. We welcome your comments. E-mail us.