## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

JAMES E. FRYE,
        Petitioner,


vs.                                    Docket No.: 4:01-CR-8-2-BN


UNITED STATES OF AMERICA,
        Respondent.
_____/

**PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX
IN SUPPORT OF MOTION TO CORRECT, VACATE, AND/OR SET ASIDE
CONVICTION PURSUANT TO TITLE 28 U.S.C. SECTION 2255**

COMES NOW James E. Frye with this his Memorandum of Law and Supporting

Appendix in support of his Motion to Correct, Vacate and/or Set Aside Conviction

pursuant to Title 28 U.S.C. Section 2255 and in support of the same provides as

follows:

### SUMMARY OF THE PROCEDURAL HISTORY

1.   On August 19, 1999, Petitioner and Billy Cooper were charged with the

capital murder of Lottie Anderson a/k/a Marshall and Willie Hatten in Jasper

County, Mississippi.[1]

2.   In February, 2001 Petitioner and Cooper were indicted in the Southern

District of Mississippi for carjacking resulting in the deaths of Lottie and Hatten in

violation of Title 18 USC §2119(3), a death-eligible offense for using a firearm

during the carjacking and transporting Lottie's stolen vehicle across State lines.

_____

[1] The State Prosecution for Jasper County deemed to be too costly for the State
Officials to prosecute.  They requested Federal assistance in prosecuting of the case.

3. In April, 2001 the government filed a superseding indictment adding the charge of conspiracy to the original charges.[2]

4. On August 26, 2004 in order to comply with the Supreme Court's recent decision in *Ring v. Arizona*, 122 S. Ct. 2428 (2002) and *United States vs. Cotton*, 535 U.S. 625, 122 S. Ct. 1781 (2002) conceding that the aggravating factor of death or injury must be alleged in the indictment.

5. Petitioner was tried via a superseding indictment between January 24, 2005 and February 10, 2005. Petitioner was found guilty in counts one through four. Since this was a death penalty case, the case proceeded to the penalty phase where the jury was unable to agree on the sentence.

6. The jury was unable to reach a verdict on the penalty phase and Petitioner was sentenced to life incarceration without parole on count two along with 37 months as to counts one and four to run concurrent to each other but consecutively to counts two and three. Petitioner was also sentenced to five years of supervised release to run consecutively to counts one, two, and four.

7. On June 6, 2007 the Fifth Circuit Court of Appeals affirmed Petitioner's sentence and conviction.

---

[2] After the government filed the Notice of Intent to Seek the Death Penalty for the carjacking charge in Count Two, Petitioner filed a Motion to Dismiss the Death Penalty alleging prosecutorial misconduct as well as violations of his speedy trial rights. The Court concluded that the government had violate Petitioner's right to a speedy trial insofar as the death penalty was concerned and barred it from seeking the death penalty but denied Petitioner's Motion to Dismiss the sustentative charges. The government appealed. The Fifth Circuit Court of Appeals reversed the District Court's finding that Petitioner's speedy trial rights had been violated and remanded the case to the District Court. See *United States v. Frye*, 372 F3d 729 (5th Cir. 2004)

8. Petitioner filed a Request for a Writ of Certiorari to the United States Supreme Court which was denied on January 7, 2008.

9. This timely Title 28 U.S.C. § 2255 follows.

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28 U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

## STATEMENT AS TO WAIVER, CAUSE, AND PREJUDICE

Mr. Frye did not raise these claims on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal.

"Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States,*  59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States,* 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States,* 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States,* 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel,

cause exists for the failure of Mr. Frye to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Mr. Frye to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway,* 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall,* 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. Frye has properly pleaded "prejudice" by pleading the "fundamental defect" in his conviction, as set forth herein. *Ward v.  United States*, 995 F.2d 1317, 1321 (6th Cir. 1993).  "Prejudice" to Mr.  Frye, within the meaning of *United States v. Frady*, 456 U.S. 152, (1982), as construed in case law such as *United States v. De La Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr.  Frye sentence is in violation of the Constitution and laws of the United States. *Id.  See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 Movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Frye of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## JUDGMENT REQUESTED

Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings,  Mr. Frye asks this Honorable Court to **ORDER** an evidentiary hearing where he can prove the allegations herein by: (A) his own testimony; (B) the testimony of Attorneys Cynthia Stewart, Cynthia Speetjens and Judy Epps; (C) additional evidence; and (D) legal argument to be presented at the hearing.

Upon proof of Mr. Frye's allegations herein, Petitioner asks this Honorable Court 1) **ORDER** that Mr. Frye's conviction be **VACATED** and that he be allowed to accept the original plea that was offered by the Government and the State that was never presented to him and/or 2) that this Court **GRANT** an evidentiary hearing where the facts may be properly developed on the record.

## STATEMENT OF THE FACTS

In August of 1999, Petitioner and co-defendant Billy Cooper *aka* "Rabbit" with charged with the capital murders of Lottie Anderson *aka* Marshal and Willie Hatten in Jasper, Mississippi.  The prosecution was deemed too costly by State officials, and federal assistance was sought and prosecuted in the case.  In February of 2001, Petitioner and Cooper were indicted in the Southern District of Mississippi for car jacking resulting in the deaths of Lottie and Hatten in violation in Title 18 U.S.C. 2119(3), a death eligible offense for using a fire arm during the car jacking and transporting Lottie's stolen vehicle across state lines.

The government then filed a superseding incitement in April of 2001 which added a conspiracy charge.  After the government filed a Notice of Intent to seek the

death penalty as to the car jacking charge in Count II, Petitioner filed several motions to dismiss the death penalty alleging prosecutorial misconduct and violations of Petitioner's speedy trial rights.

The District Court concluded that the government had violated Petitioner's right to a speedy trial in so far as the death penalty was concerned and barred from seeking the death penalty; however denied Petitioner's motion to dismiss the substantive charges. The government appealed. The Fifth Circuit Court of Appeals reversed the District Court's findings that Petitioner's speedy trials had not been violated. See *United States v. Frye*, 372 F.3d 729 (5th Cir. 2004)

A second superseding indictment was filed by the government on August 26, 2004 in order to comply with the Supreme Court's ruling in *Ring v. Arizona*, 122 S. Ct. 2428 (2002) and in response to *United States v. Cotton*, 535 US 625 (2002) which the government conceded required that aggravating factors be alleged in the indictment. The government acknowledged as early as December 2, 2002 in a pleading filed with the District Court that needed to re-indict Petitioner Frye but did not do so until August 26, 2004.

In the interim, co-defendant Cooper was tried in April of 2002 found guilty and sentenced to life. The government argued at Cooper's trial that Cooper was the mastermind and allegedly the individual who had shot both victims, Hatten and Anderson.

Petitioner Frye was tried on the superseding indictment from January 24, 2005 through February 10, 2005. Petitioner was found guilty on Counts I through IV.

The case proceeded to the penalty phase where the jury was unable to agree on the sentence.  Petitioner was sentenced to life incarceration without parole as to Count II.  The Court also sentenced Petitioner Frye to 37 months on Counts I and IV to run concurrent with each other but consecutive to Counts II and III.  Petitioner was also sentenced to five years consecutive as to Counts I, II and IV.

## ARGUMENT

## I. THE CONVICTION OF MR. FRYE IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

1) The Performance of Counsel for Mr. Frye Fell Below an Objective Standard of Reasonableness during the Pre-Trial and Appellate Phases

a. Ineffectiveness – Performance Standard of Review

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims.  To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."

*Id*

The Court clarified that this reference to "highly deferential scrutiny"[3] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[4] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986).  *See also: Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)

The Supreme Court noted that,

---

[3] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

[4] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*,  466 U.S. at 691.

"a single, serious error may support a claim of ineffective assistance of counsel."

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance," even where, "counsel's performance at trial was "generally creditable enough," and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[5]

The government argued, and the Court agreed that the determining factor was whether counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy." *Id.*, 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective

---

[5] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same).

standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.*  477 U.S. at 385.

The Supreme Court added:

"Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel.  From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland*.  *See Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).  In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[6] if counsel's specific acts or omissions are not

---

[6] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

demonstrably[7] the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[8] Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington*, 466 U.S. at 690.

---

[7] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley*, 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996)(same).

[8] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical" or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra*, 878 F.2d at 711 (citing *Strickland*, 466 U.S. at 690-91); *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998) (same); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996).

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [9] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [10]

In the instant case, Mr. Frye has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

b. Ineffectiveness – Prejudice Standard of Review

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

*Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

---

[9] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[10] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case",[11] the Court specifically and explicitly rejected this argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[12]

---

[11]This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano,* 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

[12] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.[13]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

---

contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell*,:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland*. The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

[13] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

"Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[14] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland,* 466 U.S. at 694-95; *United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[15]

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover,* 121 S.Ct.

---

[14]*Lockhart v. Fretwell,* 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[15] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor,* 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id.  See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[16]   Specifically, Petitioner has made specific, sworn, factual allegations, in his Title 28 U.S.C. § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial and phase of his case.

Based on the foregoing facts and law, Mr.   Frye has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

---

[16] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States,* 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States,* 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham,* 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono,* 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also constitutes "cause" allowing the Court to reach the merits of Mr. Frye's claim of violation of his rights under the Sixth Amendment.

## A. PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN PRIOR ATTORNEY MR. SHOEMAKER FAILED TO ADVISE PETITIONER THAT A PLEA THAT DISPOSED OF THE STATE AND FEDERAL CHARGES WAS OFFERED

Petitioner provides, that Mr. Shoemaker his prior State trial defense attorney rendered ineffective assistance of counsel when he failed to advise Petitioner that the State authorities (Eddie Bowen - District Attorney) had offered Petitioner the opportunity to plead guilty to two charges which would result in a total term of incarceration of 20 years, that would resolve the pending charges in the State of Mississippi and not have the case bound over to the federal authorities.

Furthermore, counsel was also advised by the U.S. Attorney's Office that they were willing to offer a ten year plea relating to violations of Title 18 U.S.C. § 922(g)(1) with a ten year consecutive sentence to a violation of Title 18 U.S.C. § 924(c)(1)(a) for using a firearm during a crime of violence and a ten year sentence to violations of Title 18 U.S.C. § 924(b) for interstate transportation of a firearm relating to a crime of violence that would carry ten years concurrent with the Counts I and II.  All these charges were a package deal offered by the State of Mississippi and the federal authorities.  In essence, Petitioner would have served a total of 20 years incarceration in the State of Mississippi along with a 20 years

incarceration concurrent with the 20 years to be served in State custody.[17] (See Appendix – A) It was not until after the trial had occurred and Petitioner was convicted, sentenced and the appellate process completed, that Petitioner received a partial (2 box portion) of his case files from his appellate attorney.[18]

Petitioner presents via a sworn affidavit attached to this Title 28 U.S.C. § 2255, that at no point prior to the decision to proceed to trial, did he ever address with counsel the possibility of pleading guilty to a 20 year term of incarceration which would resolve both the State and Federal charges.[19] (See Appendix – B) As this

---

[17] The plea offered provided by the U.S. Attorney's Office also required Petitioner to waive any Hyde Amendment argument or any post conviction relief pleadings.  It would also require Petitioner to allocate to the factual basis presented during the Rule 11 change of plea hearing.

[18] Petitioner still has pending before this Court a Motion for Reconsideration on the denial of the order compelling the release of the case file and is currently on appeal in the Fifth Circuit Court of Appeals to compel the release of the case file.  It is Petitioner's position that based on this limited documentation that he has been able to obtain as a result of the limited documents that he was able to secure from his appellate counsel, that additional documentation supporting his position that a State plea offer was provided to counsel on November 20, 2000 along with a fax from the U.S. Attorney's Office stipulating to the terms that it would agree to resolve the matter on November 17, 2000 that additional documentation is in the counsel's trial file that supports the allegations of ineffectiveness that he raises in this pleadings.  The District Court has taken the position that Petitioner is in a "fishing expedition" and it refuses to compel counsel to release the case file. However, the mere fact that documentation showing that a plea was offered as early as year 2000 which would have avoided the term of incarceration that was offered to counsel and counsel failed to present the same to Petitioner, is sufficient within itself to establish the granting of the motion for release of the case file.

[19] Although there were hearings addressed in the District Court relating to a Federal plea *after* the case was submitted to the Federal authorities for prosecution, that plea offer is not the issues raised in his Title 28 U.S.C. § 2255.  The plea offer that was presented by the Federal authorities after the case was prosecuted by the U.S. Attorney's Office was a term of life incarceration.  That plea offer was rejected

Court is aware, originally the government presented that it did not intend it to seek the death penalty against Petitioner. And notwithstanding the fact that the prosecutor steadfastly presented to Petitioner's counsel, the Court, and to all the parties involved that no death penalty would be sought since it was determined in the original trial of defendant Cooper that the "triggerman" was defendant Cooper and not Petitioner, the government then *reversed* its position and proceeded with the death penalty prosecution against Petitioner.

This Court need only consider the consequential differences between a 20 year term of incarceration that would have resolved all the matters, and the possibility of receiving the death penalty. It is obvious that Petitioner would not have risked the possibility of losing his life in order not to spend 20 years incarcerated in State custody. The sheer outcome of the possible sentence versus the possibility of resolving the matter is too great within itself for this Court to reach a determination that Petitioner voluntarily rejected the offer. Petitioner steadfastly presents that at no time prior to reviewing the partial case file that he has received from his appellate attorney did he ever know about or reject a plea offer of 20 years from the State and Federal prosecution. Had he known that this plea offer was made, he would have never proceeded to trial at either the State or Federal level. It was counsel's failure to advise Petitioner of the availability of the plea offer and allow him the opportunity to make the informed decision as to which avenue he

---

by Petitioner. However, the plea offer of 20 years to the State charges with 20 years concurrent to the Federal charges to resolve the matter in 2000 *was never* presented to Petitioner nor was the opportunity ever provided to him to reject the same. It is unknown why counsel never presented the same to Petitioner.

wished to pursue that reaches a definite level of ineffective assistance of counsel violating Petitioner's constitutional rights to a proper representation.

In the similar case of *United States Ex. Rd. Caruso v Zelinsky*, 689 F.2d 435 (3rd Cir. 1982), the defendant alleged that his counsel failed to communicate to him a plea offer. The *Caruso* court held that, "[t]he decision is for the accused to make ... [and] failure of counsel to advise his client of a plea bargain ... constitutes a gross deviation from the accepted professional standard." *Id.* at 438   Also, in *United States v. Rodriguez*, 929 F.2d 747 (1st Cir. 1991), the First Circuit held that "there is authority which suggest that a failure by defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on ground of incompetence alone ..." *Id.*

The Seventh Circuit in *Johnson v. Duckworth*, 793 F.2d 398 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct 416, 93 L.Ed 2d 367 (1986), held that "in the ordinary case criminal defense attorney's have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the Sixth and Fourteenth Amendments." *Id.* at 902   The Fifth Circuit in *Beckman v. Wainwright*, 639 F.2d 252 (5th Cir. 1981), held that although an attorney need not "obtain defendant's consent to every trial decision," where the issue is whether to advise the client to plead or not "the attorney has the duty to advise the defendant of the available options and possible consequences" and failure to do so, constitutes ineffective assistance of counsel. *Id.* at 267

The Sixth Circuit in *Turner v Tennessee*, 858 F.2d 1201 (6th Cir. 1988) *vacated on other grounds*, 492 U.S. 902, 109 S.Ct 3208, 106 L.Ed 2d 559 (1989), *reinstated*, 726 F.Supp 113 (M.D. Tenn. 1989), *aff'd*, 940 F.2d 1000 (6th Cir. 1991), *cert. denied*, 112 S.Ct 915, 116 L.Ed 2d 815 (1992), held that an attorney's incompetent advise resulting in the defendant's rejection of a plea constitutes ineffective assistance of counsel. *Id.* at 1205

In addition, under the *Strickland* test a court deciding whether an attorney's performance fell below a reasonable professional standard can look to the A.B.A. Standards for guidance. *Id. Strickland*, 466 U.S. at 688.   The A.B.A. standards of criminal justice provides in relevant part:

> Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or *nolo contender* is ultimately made by the defendant.

*Id.* A.B.A. Standards of Criminal Justice, 14-32

The A.B.A. Criminal Justice Standards provide that the ***conclusion*** of a plea agreement should ultimately be decided by the defendant.   The use of the term "conclude" implies that the client's consent is needed whether the decision is to accept or reject a plea offer. While *Strickland* explicitly stated that the A.B.A. Standards "are only a guide," *Strickland,* 466 U.S. at 688, the standards support the conclusion that, accepting Mr. Frye's allegations as true, defense counsel's conduct fell below reasonable standards. Based on both the A.B.A. Standards and the law of the circuits, this Court must agree that counsel's failure to communicate the

Government's fourth plea offer to Petitioner, constitutes unreasonable conduct under prevailing professional standards.

### 1. Appropriate Remedy

Since Petitioner has shown actual ineffective assistance of counsel, the District Court will have to fashion a remedy that is "tailored to the injury suffered and [does] not necessarily infringe on competitive interests." *United States v. Morrison*, 449 U.S. 361 (1981) Since the remedy for counsel's ineffective assistance should put the defendant back in the position she  would have been in if the Sixth Amendment violation would not have occurred, in certain circumstances granting a new trial may not be the appropriate remedy.

The solution to the problem appears to be straight forward. Requiring the State and the Government to reinstate the original plea offer is constitutionally permissible. *See Mabry v Johnson*, 467 U.S. 504, 510 (1971) *See also Partida-Parra*, 859 F 2d at 633, [noting that in certain circumstances "it may be appropriate for the court to order 'specific performance' of the [plea] bargain."] Thus, were as here, the defendant was deprived of the opportunity to accept a plea offer, putting Mr. Frye in the position he was in prior to the Sixth Amendment violation originally will involve reinstating the original offer.

Requiring the State and the Government to reinstate its original offer would also accommodate the policy articulated by the Supreme Court in *Kimmelman v Morrison*, 477 U.S. 365 (1986), where the court held that ["the constitution constraints our ability to allocate as we see fit the ineffective assistance. The Sixth

Amendment mandates that the State [or Government] bear the risk of constitutionally deficient assistance of counsel." *Id.* at 379, 106 S.Ct at 2585

Under *Kimmelman*, even if one might perceive that the Government's competing interest might be infringed by requiring that the original offer be reinstated; a contrary result would impermissibly shift the risk of ineffective assistance of counsel from the Government to Petitioner.

Wherefore, based on the aforementioned facts, this Court must agree that Petitioner was never advised of his right to accept or deny the Government's final offer and as a result, has received an enhanced sentence, which would have been avoided had he been advised of the Government's final offer. Therefore, this Court must hold an evidentiary to determine why Petitioner Frye did not receive the State and the Government's offer and apply the appropriate remedy.[20]

## B. TRIAL COUNSEL CYNTHIA STEWART RENDERED INEFFECTIVE ASSISTANCE WHEN SHE ADVISED DEFENDANT BILLY COOPER TO PLEAD THE FIFTH AMENDMENT DURING PETITIONER'S DEFENSE AND NOT TESTIFY IN PETITIONER'S DEFENSE

Petitioner presents, that his attorney Cynthia Stewart rendered ineffective assistance when she advised witness Billy Cooper not to testify in Petitioner's defense notwithstanding the fact that Mr. Cooper wanted to provide "things he knew to be true which occurred on or about April 13, 1999 (murders of Marshal and Hatten)". (See Appendix C, Sworn Affidavit Billy D. Cooper).

---

[20] As previously mentioned, all that Petitioner was aware of was the plea offered of LIFE incarceration that was offered *after* the Federal government began prosecuting the case. That plea was rejected.

For some unknown reason, Petitioner's counsel took the position that defendant Cooper should plead his Fifth Amendment constitutional right and not be allowed to testify in Petitioner's defense. Had defendant Cooper been allowed to testify, defendant Cooper would have been able to provide substantial information, that established Petitioner's non-involvement in the charged offense and non-involvement in the murders.   Defendant Cooper provided in his sworn affidavit, that when he questioned his attorney Public Defender Dennis Joiner while he would not be allowed to testify to the facts which "he felt would be helpful to Mr. Frye's case," he was advised by Mr. Joiner that the decision was made by Defense Attorney Cynthia Stewart because she was in charge of Mr. Frye's defense. Furthermore, notwithstanding the fact that defendant Cooper was summoned and transported via a Writ to the Madison County Detention Center per an Order issued by Judge Barbour at the request of Petitioner and his attorney to testify in Petitioner's defense on the incident that occurred on April 13, 1999, Petitioner's counsel for some unknown reason, took the position that Mr. Cooper's testimony should not be presented to the jury.   Presented herein, as Appendix - D, defendant Cooper provided under Penalty of Perjury pursuant to Title 28 U.S.C. § 1746, a detailed statement alleging Petitioner's non-involvement in the charged offense.   Had the jury been allowed to address and consider Mr. Cooper's direct testimony exonerating Petitioner from the charged offense, the outcome of the trial would have resulted in Petitioner's acquittal.   Defendant Cooper was already charged and convicted of the murders prior to being requested to testify in Petitioner's defense.

Defendant Cooper was ready, willing, and able, to present information to the jury relating to conversations that defendant Cooper and investigator Stewart had relating to this case which would have not only yielded the lies that investigator Stewart had presented in Petitioner's case, but would have presented sufficient doubt in the jury's mind in order to acquit Petitioner.

There is absolutely no tactical reason whatsoever why Petitioner's counsel would initially request the main witness involved in the crime to testify on Petitioner's defense, then request that the witness withhold all of the information that he wishes to present to the jury.  There was no information whatsoever that defendant Cooper would have presented which would have prejudiced Petitioner's defense in any way or manner.  As the Supreme Court's decision in *Strickland,* presented, all Petitioner is required to do is "identify the acts or omissions of counsel that are alleged not to have been the result of a reasonable professional judgment." *Id.* at 690.  It is evident, that counsel's failure to allow defendant Cooper to testify that he is in fact the alleged mastermind and shooter of this case which would have exonerated Petitioner, causes counsel's actions to be viewed as rendering ineffective assistance at this stage of the proceeding.

The Courts have previously decided that counsel's failure to consider relevant facts to a potentially viable defense cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical" or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursing a certain line of investigation [or testimony] where she has not yet

25

retained the facts which would permit a decision to be made". *Gray,* supra, 878 F.2d at 711 (citing *Strickland,* 466 US at 690-91); *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1988); *Nickels v. United States*, 75 F.3d 1137 (7th Cir. 1996).

Accordingly, the only way for this Court to make a determination whether counsel's error in advising defendant Cooper to plead the Fifth Amendment when he had exonerating information that could have been used for Petitioner's defense, which would have ultimately resulted in a verdict of not guilty, is to hold an evidentiary hearing to address counsel's actions on the record.[21]  Then, after the Court addresses counsel's actions on the record, this Court will ultimately reach a determination that counsel's actions were in effect prejudicial to Petitioner's defense.

Accordingly, Petitioner respectfully prays that this Honorable Court will grant an evidentiary hearing to determine why counsel has requested that defendant Cooper plead the Fifth Amendment, after it was determined that defendant Cooper was able to provide exonerating information which would have resulted in a not guilty verdict.  Furthermore, since defendant Cooper's affidavit is not contested by the files and records of this case, this Court must hold an evidentiary hearing to determine the allegations raised not only by Petitioner in his Title 28 U.S.C. § 2255 but also the allegations raised by defendant Cooper in the sworn affidavit presented herein.

---

[21] Defendant Cooper can present his testimony and can present that counsel did in fact instruct him into pleading his Fifth Amendment constitutional right.

## C. PETITIONER PROVIDES THAT HIS TRIAL COUNSELS WERE INEFFECTIVE WHEN THEY FAILED TO CALL SUBPOENAED WITNESSES TO TESTIFY IN PETITIONER'S DEFENSE.

Petitioner provides, that his trial counsels rendered ineffective assistance when they failed to call several subpoenaed witnesses, Mabel Martin, Estelle Martin, and several others which were ready to testify in the Petitioner's defense. Counsel after speaking with the witnesses during the trial, gave the determination that the witnesses would not testify because they were "allegedly in fear of retaliation" from investigator Tyrone Stewart. Witness Mabel Martin and Walter Martin were employed in the Laurel Police Department just as was investigator Stewart during that time. Allegedly, investigator Stewart had threatened both witnesses which caused them to refuse to testify although they were on subpoena by defense counsel.

Once defense counsel made a determination that the witnesses were threatened to testify by investigator Stewart and therefore not willing to testify for the defense, counsel had an obligation to request a hearing either in camera, or at a side bar and advise the Court of the incident that had developed since the witnesses arrived. The Court, in camera, could have questioned the witnesses to make a determination as to the extent or validity of the threat that they had received and provided an appropriate remedy, possibly requesting an investigation into Investigator Stewart's actions. However, merely refusing to call the witnesses to testify under the assumption that they were "threatened" rendered Petitioner's defense meaningless. The proper actions required by counsel when the witnesses were ready to testify, was to either (a) place them on the stand and question them

relaying the information that they could provide to the defense, or (b) if counsel believed that the witnesses were threatened, immediately file the proper pleadings with the Court or request an in camera review of the statements that the witnesses would provide for the Court's determination as to whether it should proceed with other actions against investigator Stewart. Merely refusing to call the witnesses and not follow through on the planned defense strategy causes counsel's actions to fall short of the Sixth Amendment constitutional guarantee to effective assistance of counsel. Counsel cannot establish any tactical reason whatsoever why it would refuse to call a witness after being subpoenaed and after speaking to the witness immediately before presenting the witness's testimony.

To state a claim of ineffectiveness under *Strickland*, Petitioner must, identity of the witnesses and to what the witnesses would testify, *United States v. Castillo*, 214 F.2d 351 356 (7th Cir. 1987), how the witnesses testimony would help the defense, *Dees v. United States,* 789 F.2d 1521, 1522 (11th Cir. 1986), that the witnesses were willing to testify on Petitioner's behalf, *United States v. Harden*, 846 F.2d 1229, 1231-1232 (9th Cir. 1988), and that defense counsel was informed of the witnesses testimony in a timely manner, *United States v. Norwood,* 798 F.2d 1094, 1100-1101 (7th Cir. 1986). (See Footnote 12)

Petitioner does not have to show that the results of the proceedings would have definitely been different, he must only show that, "in light of all the circumstances, the [alleged] acts or omissions of counsel were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. By failing to

present prepared defense witnesses after he was placed on notice that the witnesses were available counsel has not render the required assistance of a competent counsel as required by the Sixth Amendment.

Once this is shown, and it is determined that counsel was in fact ineffective during the proceedings, then a substantial violation of a Sixth Amendment Constitutional right to effective assistance of counsel has been shown and an evidentiary hearing will be required.  Accordingly, the mere fact that the witnesses were ready to testify and alleged that they were threatened was within itself sufficient to warrant a hearing before this court.

**D. TRIAL COUNSEL WAS INEFFECTIVE WHEN THEY FAILED TO MOVE FOR DISMISSAL OF THE INDICTMENT DURING THE PRE-TRIAL STAGE WHEN THE TRIAL WAS NOT STARTED WITHIN 70 DAYS AFTER INDICTMENT**

Petitioner presents that his attorneys were ineffective when the failed to move for dismissal of the charges after the initial Speedy Trial Act violation had occurred during the pre-trial portions of the case.  In fact, the Fifth Circuit did not provide any relief to Petitioner from his conviction on the Speedy Trial violations since the Court took the position that the Petitioner's counsel had only filed motions for dismissal that included "continuances" and were not in effect a request for dismissal of a Speedy Trial violation, "... holding that Frye's motions for dismissal do not amount to an assertion of his speedy trial rights. This applies equally to those motions for dismissal before the interlocutory appeal and after the remand."

The Fifth Circuit determined that counsels' had not filed for actual dismissal of the charges due to a Speedy Trial violation, but dismissal due to other grounds,

mostly prosecutorial misconduct.   The Speedy Trial Act provides that the clock starts on the date the indictment is filed or the date the defendant has appeared before a judicial officer, whichever is later.   Like many other circuits, the Fifth Circuit has "construe[d] 'appearance before a judicial officer' to mean a defendant's *initial* appearance before a judicial officer." See, *United States v. Ortega-Mena*, 949 F.2d 156, 158 (5th Cir. 1991) (emphasis added); see also *United States v. Mentz, 840* F.2d 315, 325 (6th Cir.1988); *United States v. Owokoniran,* 840 F.2d 373, 374 (7th Cir. 1987); *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir. 1984); *United States v. Haiges*, 688 F.2d 1273, 1274 (9th Cir. 1982); *United States v. Carrasquillo,* 667 F.2d 382, 384 (3rd Cir. 1981).

There is no question that this case took 47 months from the date of the indictment to the date of the trial.  Irrespective of the interlocutory appeals of this case, the government was required to bring Petitioner to trial within 70 days of the date of the indictment.   In fact, the Fifth Circuit determined that Petitioner could not apprise himself of the benefit of the Speedy Trial Act violation since not "formal" request for a *Speedy Trial violation dismissal* was ever sought. The Court determined that "Frye often sought a continuance at the same time he sought a speedy trial dismissal. It can hardly be said that, post-remand, Frye's four motions for continuance, one of which was granted and the other three denied, represent a defendant aggressively asserting his desire to be tried promptly."

The Supreme Court has clearly stated, "a single, serious error may support a claim of ineffective assistance of counsel." *Id. Kimmelman v. Morrison*, 477 U.S. at

384. The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance."

Accordingly, this Court must agree that the contested issue of the Speedy Trial violation was not granted by the Fifth Circuit due to the facts of the case, but due to counsel's failure to "specifically" file a direct motion for dismissal of the Speedy Trial Act (pre-trial), when the initial 70 day violation had occurred.

Therefore, Petitioner respectfully prays that this Honorable Court will grant an evidentiary hearing to determine if counsel's timely filing of the motion to dismiss due to the Speedy Trial Act violation would have resulted in the dismissal of the charges.[22]

## E. TRIAL COUNSELS WERE INEFFECTIVE WHEN THEY FAILED TO ALLOW PETITIONER TO TESTIFY AT HIS SUPPRESSION HEARING

During the preparation of this case, the Court held a suppression hearing in order to determine if the taped statements provided by Petitioner would be allowed during the trial. The Court addressed the hearing and made a determination to allow the statements.

---

[22] Petitioner understands that this Court must make a determination according to the statute on whether to dismiss the indictment with or without prejudice in this case. As this Court is aware, the Government mislead the Court, counsel and Petitioner into the position that a death penalty would not be sought and then reversed its position after the Speedy Trial Act violation had occurred. The Government's actions has caused the violation to occur and caused Petitioner's complete defense to be thwarted by the misleading statements regarding the death penalty. The prejudicial effect of the planning of the defense in this case, is a factor that this Court must consider in making the determination during the hearing on the dismissal of the charges due to the Speedy Trial Act violation.

However, during the preparation of the suppression hearing, counsel failed to advise Petitioner of the possibility to testify during the hearing.  The decision not to testify was not made by Petitioner after considering all the facts of the case, but was because he was not prepared to present the testimony required for the suppression hearing.   During the suppression hearing, Petitioner would have been able to present the fact that the taped statement was a coerced statement that he only provided after he was paid $1500.00 and promised a "bus ticket home."  In fact, his testimony would have established that he was merely assisting the authorities in the investigation into the case and was only presenting facts that were provided to him by the detectives to implement and indict Cooper.

In fact, Petitioner had nothing to lose if he was allowed to testify during the suppression hearing relating to the veracity of the statements on the tape.  The sole reasons that the statements could be used were for the impeachment purposes only. *See United States v. Charles,* 738 F.2d 686, 697 (5th Cir. 1984)(Testimony from suppression hearing can be used at trial for purposes of impeachment.)  However, when counsel makes a determination that Petitioner cannot testify during the suppression hearing since the statements may used against him during the trial for a "guilt" determination which results in Petitioner not testifying during the suppressions hearing, a clear Sixth Amendment violation to effective assistance of counsel occurs.  Petitioner steadfastly presents that the decision not to testify was not because he decided not to testify, but was merely on counsel's assurance that testimony would be used to determine his guilt during the trial. (See Appendix B)

In *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247, 1259 (1968), the Supreme Court held: "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." The issue has been addressed and a determination that counsel was incorrect in her findings established.

At the time, the possibility that Petitioner was facing the death penalty was evident. Any tactical reason that counsel had at the time, under the impression that the testimony would be used for a guilt finding, was outweighed by the benefit in suppressing the statements. Had counsels familiarized themselves with the Supreme Court's decision in *Simmons,* Petitioner would have testified during the suppression hearing which would have resulted in the suppression of the tape and a different result in the end proceeding.

Accordingly, an evidentiary hearing is required to determine if counsel was in fact ineffective for their failure in advising Petitioner that if he testified during the suppression hearing, that his statements would be used for a guilt determination and not only for impeachment purposes.

## F. COUNSELS RENDERED INEFFECTIVE ASSISTANCE WHEN THEY AGREED TO ENTER A STIPULATION OF GUILT INTO COUNTS I AND IV OF THE CHARGED INDICTMENT

Petitioner presents that trial counsels rendered ineffective assistance when they entered a stipulation of guilt to Counts I and IV of the charged indictment. Counsels made an unreasonable trial determination to enter a stipulation as to these counts and not to not put the Government's versions of the facts to judicial test.

There was no trial strategy that could have been ascertained from stipulating to the guilt of these counts. Counsel in essence agreed with the Government that federal jurisdiction existed at all stages of the proceedings. Although, trial strategy is a right that is provided to trial counsel, [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" *Strickland*, 466 U.S. at 690-91, 104 S.Ct. 2052, the court must also view the decision in light of all the circumstance.  See, *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess ***legitimate strategic choices***."

It is Petitioner's position that the counsels had no "legitimate strategic choice" in this case to agree to the stipulation of guilt to counts I and IV.  Neither was there a tactical advantage that could have been gained by agreeing the stipulation of guilt to those two counts.  "Counsel has a duty to make a reasonable and proper decision"

on trial strategies to present in a case.  See, *Kimmelman v. Morrison*, 477 U.S. at 385.

Accordingly, this Court must agree that counsels made unreasonable tactical decisions when they agreed to enter a stipulation on count I and IV of the indictment. The granting of an evidentiary hearing is appropriate to make a determination whether counsels' actions have reached a level of subsequent prejudice by stipulating to guilt on Counts I and IV.

## G. APPELLATE COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO RAISE AN ISSUE OF PROSECUTORIAL MISCONDUCT ON DIRECT APPEAL

As this court is aware, the Government in this case was involved in multiple cases of prosecutorial misconduct when it failed to release *Brady* material regarding the investigation of Petitioner's case.[23] The misconduct was also extended to misleading counsel and the Court into the position that Petitioner would not be charged with the death penalty, not contacting counsels in order to properly prepare before the DOJ regarding the death penalty issues, not timely releasing discovery material[24] and directly lying to the court.

---

[23] In fact, it was not until one week before trial that the government that additional prosecutorial misconduct was found when the government advised the defense team that it intended to present the testimony of Mary Denise Dean, Cooper's girlfriend to show that Petitioner was the shooter. That theory was inconsistent with the testimony presented at Cooper's trial.  That theory was a direct contradiction of what the Government presented to the Court and to the defense as their theory.

[24] On January 6, 2005 after discovering additional evidence that had not been previously revealed, Petitioner's counsel renewed a motion for discovery of exculpatory evidence. The Court responded by asking the government to clarify "why this discovery seems to be continuing to trickle in here."

Based on the government's continual misconduct and withholding of information as recent as one week before trial, the defense team had to re-establish the defense strategy based on the government's continual withholding of information in this case. In fact, during the guilt phase of this case, the government continued to present previously undisclosed statements that Petitioner was the shooter of both victims. Even during an evidentiary hearing that this Court held during the remand of *Frye I*, this Court determined that the government had been involved in continual deceit of the facts to the defense team and the court.

> Judge Barbour found that the "court has already found to be a misleading of the defendant's counsel on the issue of whether it was going to seek the death penalty as to the defendant Frye [which] has placed the defendant at a real disadvantage." The court further found that the government had delayed getting authority to seek the death penalty from the Justice Department and "thereby delay[ed] the notice of the death penalty decision" and "has had that additional time to prepare the case to the defendant's disadvantage." *Id.* The judge also found that the defense was mislead, and therefore did not seek permission to employ expert witnesses, psychological witnesses and mitigation witnesses which the court would have authorized had they been requested. The judge also found that he was "convinced they didn't request it because they did not think that the death penalty was going to be sought against their client." *Id.* The judge explained the dilemma which the defendant now found himself in which is that he is now forced to "waive the Speedy Trial Act rights and to further delay the trial of the case for long enough time for his attorneys to properly prepare. So the defendant makes the choice between bad and worse." (Transcript of Hearing after Remand in Frye I)

It is evident that by this Court's own statements that the prosecutor was not only attempting to win the case, but to win the case at all cost.[25] See *United States*

---

[25] Justice Hugo L. Black accurately portrayed this stricter duty when he paraphrased Justice Oliver Wendell Holmes' earlier statement that, "Men must turn square corners when they deal with the Government." *Rock Island, A & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). Justice Black stated:

*v. Gonzalez,* 344 F.3d 1036 (10th Cir. 2003)(The Government's focus should not be to win at all costs, but to advance integrity and fairness in our legal system.)

The issue was properly prepared for appellate review. There was no reason why appellate counsel would leave out of the Fifth Circuit's consideration an issue that was "dead bang winner" on appeal. *United States v. Cook,* 45 F.3d 388 (10th Cir. 1995) (The Sixth Amendment does not require an attorney raise every nonfrivolous issue." *Id.* at 394. Rather, counsel's performance is ineffective when a "dead bang" winner is omitted on appeal. *Id.* at 395.)

Accordingly, Petitioner respectfully prays this Court will grant an evidentiary hearing where the issues of appellate counsel's failure to raise the prosecutorial misconduct of this case can be reviewed and the appropriate remedy applied to Petitioner's case.

---

"It is no less good morals and good law that the Government should turn square corners in dealing with the people than the people should turn square corners in dealing with the Government."

*Id. Regis Paper Co. v. United States,* 368 U.S. 208, 229, 82 S.Ct. 289, 301, L.Ed.2d 240 (1960) (Black, J. dissenting)

**H. APPELLATE COUNSEL WAS INEFFECTIVE WHEN SHE FAILED TO FILE A FED. R. APP. PRO. RULE 28(j) LETTER ADVISING BOTH THE ORIGINAL PANEL AND THE ENBAN PANEL OF THE FIFTH CIRCUIT THAT THE SUPREME COURT HAD RENDERED A DECISION IN *ZEDNER v. UNITED STATES*, 547 U.S. 489 (2006) AFTER THE BRIEFING OF PETITIONER'S APPEAL HAD BEEN FILED THAT WOULD HAVE CHANGED THE LANDSCAPE OF THE FIFTH CIRCUIT'S DECISION**

### a. Application of Fed. R. App. Pro. Rule 28(j)

On May 12, 2005 a notice of appeal was filed in the final judgment of Petitioner's case, beginning the appellate process for review in the Fifth Circuit. The Fed. R. of App. 28(j) states: "Citation of Supplemental Authorities. If pertinent and significant authorities come to a party's attention after the party's brief has been filed - or after oral argument but before decision - a party may promptly advise the circuit clerk by letter, with a copy to all oral other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally." The Rule 28(j) was amended in 2002 as follows: "Rule 28(j) continues to require parties to state the reasons for supplemental citations, with reference to the part of a brief or oral argument to which the supplemental citations pertain." (emphasis added)

Under the Fifth Circuit's precedent, Petitioner's counsel had an obligation to file a Rule 28(j) letter with the Court that would have allowed the raising of new Supreme Court authority. [26] During the time that the brief was being prepared, the Supreme Court rendered a decision in *Zedner v. United States*, 547 U.S. 489 (2006)

---

[26] Although the decision was rendered before the brief was filed, counsel should have filed the Supplemental Authority according to the rules for acceptance in the Court. There is a possibility that due to the multiple continuances that were extended in this appeal, that the case was overlooked by appellate counsel.

that determined that a criminal defendant cannot waive the application of the

Speedy Trial Act prospectively for all time.

### b. Application of *Zedner* to Petitioner's case

In the *Zedner* decision the Supreme Court determined that is an error not to

allow a dismissal for the violation of the Act for the *"[f]ailure of the defendant to*

*move for dismissal prior to trial* or entry of a plea of guilty or nolo contendere shall

constitute a waiver of the right to dismissal under this section." *Id.* at *502.   The

Fifth Circuit in the appellate decision of Petitioner's case took the position that:

> "[a]n assertion of that right is a demand for a speedy trial, which will generally
> be an objection to a continuance or a motion asking to go to trial. At the very
> least, a defendant's assertion of his speedy trial rights should manifest "his
> desire to be tried promptly." *United States v. Litton Sys., Inc.,* 722 F.2d 264, 271
> (5th Cir. 1984). *Frye's repeated motions for dismissal of the capital charge are not*
> *an assertion of the right,* [Act] but are an assertion of the remedy.  A motion for
> dismissal is not evidence that the defendant wants to be tried promptly." *Id* at
> *212

The Fifth Circuit relied on the Supreme Court's decision in *Barker v. Wingo*

407 U.S. 514, 92 S.Ct. 2182 (1972) in determining that Petitioner's assertion of or

failure to assert his right to speedy trial is one of the factors to be considered in an

inquiry into the deprivation of the right and reached the determination that the Act

was not violated since Petitioner's counsels "repeated motions for dismissal of the

capital charge *are not an assertion of the right*, but are an assertion of the remedy."

However, in reaching that determination the Fifth Circuit failed to consider due to

counsel's failure to file a timely Rule 28(j) letter with the Clerk's Office the Supreme

Court's decision that was rendered in the interim in *Zedner v. United States*, 547

U.S. 489 (2006).  The fact that Petitioner had filed numerous motions for dismissal

was the equivalent (according to *Zedner*) of his request for the application of the Speedy Trial Act.

In fact, appellate counsel rightfully argued that Petitioner was lured into continuances under the misrepresentations of prosecutor Barrett that no death penalty would be sought.  This Court agreed that AUSA Barrett had misled counsel and the Court regarding the application of the death penalty of this case.  The Government's actions caused the requests for the continuances that were relied upon by the Fifth Circuit in determining that prejudice could not be established for the violation of the Speedy Trial Act.  Raising the *Zedner* decision to the Appellate panel, would have caused the Fifth Circuit to determine that based on the Government's actions, the dates excluded in the calculations of the violation of the Act as per the Fifth Circuit's decision would have yielded different results.  The Government's change resulted in not only the interlocutory appeal, but most of the extensions in this case.

In fact, the *Zedner* opinion also reached a conclusion that:

"'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895).  This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test,

"several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position .... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.,* at 750-751, 121 S.Ct. 1808 (citations and internal quotation marks omitted).

Based on the Zedner position, it is obvious that the Government was able to secure the violation of the Speedy Trail Act.  And, counsel's failure to file the 28(j) letter in the District Court caused the Fifth Circuit to reach a detrimental decision in Petitioner's case.

Accordingly, Petitioner respectfully prays this Honorable Court will grant an evidentiary hearing in this case and make a determination of the extent of prejudice that Petitioner is suffering because of counsel's failure to timely file a Rule 28(j) letter in the Fifth Circuit.

## I. APPELLATE COUNSEL WAS INEFFECTIVE FOR HER FAILURE TO APPEAL THE DISTRICT COURTS DENIAL OF THE MOTION TO DISMISS FOR A SPEEDY TRIAL VIOLATION WHEN THE SUPERCEDING INDICTMENT WAS NOT RETURNED WITHIN 30 DAYS OF THE ORIGINAL INDICTMENT

Petitioner presents that counsel was ineffective when she failed to appeal the District Courts denial of the motion to dismiss the superseding indictment when it was not returned within 30 days of the original charges.

Trial counsels prepared and preserved the issue on the pleadings before this Court on January 21, 2005 and preserved the record for the issue.  Appellate counsel had a responsibility to raise the issue for consideration in the Fifth Circuit

41

Court of Appeals for determination of the issue if the District Court erred in not dismissing the indictment at that stage.

As a threshold matter, the Court's have addressed that counsel renders ineffective assistance when counsel fails to present on appeal an issue that would have merit on appeal. This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and constitutes "cause" allowing the Court to reach the merits of Petitioner's claim of violation of his rights under the Sixth Amendment. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United Stases v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

The Speedy Trial Act ("Act") stated that "any information or indictment charging an individual with the commission of an offense shall be filed within 30 days was arrested or served with a summons in connection with such charges." *See,* 18 U.S.C. § 3161(b). Any indictment violating this provision offends the Sixth Amendment right to a speedy trial on which the STA is based, and must be dismissed. *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3rd Cir. 1988) In Petitioner's case, although the original indictment was filed within the 30 days of his arrest, the second superseding indictment was filed well after the 30 days of Petitioner's original arrest of March 20, 2001. In interpreting the 30 day

requirement, courts have delineated a number of situations where the statute does not apply to the filing of superseding indictment.[27]  In the instant case, the second superseding indictment does not squarely fall into any of the permitted scenarios of filing after the 30 days have expired.

It charged neither new offenses nor alleged identical offenses based on identical facts. It charged neither new offenses nor alleged identical offenses based on identical facts.  As to Petitioner, the offense remained the same; however, the prosecution added its previously omitted statutory aggravating factors in order to charge a death penalty offense pursuant to *Ring v. Arizona,* 536 U.S. 584 (2002).  In the case of *United States v. Gomez-Olmeda*, 296 F.Supp.2d 71 (D. Puerto Rico 2003) the court dismissed a superseding indictment in a case similar to Petitioner's.  In that case, the superseding indictment charged the statutory aggravating factors came *four months* after the defendant's arrest. The Court found that because the new indictment's amendment allows the government to seek the death penalty, "clearly, the addition of the Notice of Special Findings cannot purport to be the type

---

[27] *United States v. Hemmings*, 258 F.3d 857 (7th Cir. 2001); *United States v. Mosquera*, 95 F.3d 1012 (11th Cir. 1996)(stating that the Speedy Trial Act does no guarantee that an arrested individual indicted within 30 days of his arrest must, in that 30 day period, be indicted for every crime known to the government failing which he may never be charged)  In the same reasoning, the Court's have also held that where a superseding indictment contains charges identical to those charges in the original indictment and is based on identical facts, the filing of a timely indictment tolls the 30 day STA requirement. See *United States v. Perez,* 217 F.3d 323 (5th Cir. 2000)(finding that where the superseding indictment adds no new facts and contains charges identical to those in the original timely indictment, the filing of the first indictment toll the speedy trial clock).

of minor variation in facts that allows an initial indictment to toll the STA clock [citing *United States v. Martinez-Espinoza*, 299 F.3d 414 (5th Cir. 2002)]"

Obviously the preserving of the issue in the District Court the issue was ripe for consideration in the Fifth Circuit Court of Appeals. Appellate Counsel's failure to present the issue on appeal caused the District Courts decision not to be reviewed after being preserved as required. As previously presented, counsel's actions in not presenting a timely preserved issue for appeal reaches the level of "cause" allowing the issue to move forward under the ineffective assistance of counsel standard of review. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and *United Stases v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

Accordingly, this Court must agree that appellate counsel rendered ineffective assistance when she failed to preserve for appellate review this court's denial of the request to dismiss the indictment for the Speedy Trial Act's violation in not returning a superseding indictment within 30 days as required. The granting of an evidentiary hearing and addressing counsel's actions will allow the preserved issue to be properly addressed as originally intended.

## J. THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE VACATING THE CONVICTION AND/OR AN EVIDENTIARY HEARING

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his sentence. However, should the court disagree, then the cumulative effect of these errors deprived Petitioner of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated, and their cumulative impact was devastating to Petitioner's right to due process and a clear violation of her Sixth Amendment right to effective assistance of counsel.

Wherefore, Petitioner respectfully prays this Honorable Court vacate Mr. Frye's sentence due to the cumulative effects of counsel's errors. In the alternate, Petitioner requests that an evidentiary hearing be granted to allow Petitioner and opportunity to address the facts of the issues raised and further develop the record.

## II. AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the

sentence to vacate, set aside or correct the sentence.  This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. Frye has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Mr. Frye has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction is violative of his Sixth Amendment right to effective representation by counsel in trial phase of his case.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" Petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(Petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to Petitioner would entitle him to

relief*); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996)(Petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. Frye respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove his case.

### CONCLUSION

**WHEREFORE** Movant Mr. James Frye respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his Title 28 U.S.C. § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. Frye's conviction be **VACATED**.

Done this ___5___, day of January 2009

Respectfully submitted,

James Frye
Reg. # 98362-024
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808

*ATTORNEY AT LAW*

June 24, 2008

James Frye
#98362-024
USP Big Sandy Unit A-4
PO Box 2068
Inez, KY 41224

Dear James:

I have sent your mother all the records I have in your case which I am allowed to send you. As I have explained to you, I was provided limited discovery by the two Cynthias, so I do not have all the discovery that was provided you in your case. I am sending you what I have although as I have explained to you several times, I do not have your complete file. I am not allowed to send you grand jury testimony, witness statements and the presentence reports. You will have to get those by court order from the court. You can file a motion for discovery to be able to file your 2255. I am also sending you my research and motions files. As I have told you, they are not complete either. You can get all the motions from Pacer or from the clerk. I do not have copies of all the motions.

I received a letter from Cynthia Speetjens saying she had given me her complete file, but she is mistaken, I do not have her complete file. I think she means she gave it to Cynthia Stewart.

I have already sent your legal representative and your sister the transcripts by email several times. I am sending you the hard copies of the ones I have. As I told you, I do not have hard copies of all of them because I had them on disk.

You now have everything that I have except the grand jury testimony and witness statements. I do not have a copy of your presentence report.

Sincerely yours,

Julie Ann Epps
JAE/je

504 E. Peace Street
Canton, Mississippi 39046

Telephone (601) 407-1410
Facsimile (601) 407-1435
Email julieannepps@bellsouth.net

-A-

BOBBY L. SHOEMAKER
ATTORNEY AT LAW
P.O. BOX 256 • 44 5TH STREET
BAY SPRINGS, MISSISSIPPI 39422



39201X2100

Hon. Alfred B. Jernigan, Jr.
Assistant United States Attorney
One Jackson Place, Suite 500
188 East Capital Street
Jackson, MS 39201







**BOBBY L. SHOEMAKER**
ATTORNEY AT LAW

P.O. BOX 258 · 44 5TH STREET
BAY SPRINGS, MISSISSIPPI 39422

TELEPHONE (601) 764-3404
FAX (601) 764-3404

November 20, 2000

Hon. Peter Barrett
Assistant U. S. Attorney
One Jackson Place, Suite 500
188 East Capitol Street
Jackson, MS  39201

Hon. Eddie Bowen
District Attorney
100 Court Avenue, Suite 3
Mendenhall, MS 39114

   RE: *James Ernest Frye; Cause No. 10-26, 10-37 & 20-9*

Dear Peter & Eddie;

  Pursuant to my meeting with Peter last week, it is my understanding that you are offering to allow James Frye to plead to two charges which would result in two 10 year sentences to run consecutively and an additional plea that would carry a five year sentence to run concurrently with the two 10 year sentences.  Based on the two 10 year sentences, he would have to serve 18 years plus months.

  I have met with my client and we are unable to accept those pleas.  I assume the next step will be to begin preparing for trial.  My client is willing to plea to one charge and receive a 10 year sentence.  We will be happy to enter a plea and serve 10 years with credit for the time he has been incarcerated and for good behavior. Any Federal and State time would need to run concurrently.

  I am sorry that we can not enter a plea agreement on this matter.

       Sincerely yours,

       Bobby L. Shoemaker

BLS:bas



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Mississippi*

808 Vieux Marché, 2nd Floor        Telephone: (228) 432-5521
Biloxi, Mississippi 39530          Facsimile: (228) 435-3303

## FACSIMILE TRANSMITTAL SHEET

TO: Richard Webb

FAX NO.: 601 847 3428

FROM: P. Barrett

NO. OF PAGES (Including Transmittal Sheet): 4

CASE OR MATTER: Cooper / Frye

COMMENTS OR INSTRUCTIONS:

the Notes — I left a copy
with Each —
I will Confirm the 12-4-00
deadline

**[If there are any problems with this transmission, please call 228-432-5521]**

The information contained in this facsimile message is privileged and confidential information intended for the use of the addressee listed above. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please immediately notify this office by telephone to arrange for the return of the original documents to this office.

James Frye

I   Count        18/922 (g)(1)  Felon in
                                Possession
CONS.            10 years
                 Agree/ Recommend 10 years

II  Count        18/924 (C)(C)(1)(A)  Use of
                 Firearm in Crimes of
                 Violence (murder Robbery)
                                (Kidnapping)
CONS.   Agree/Recommend 10 years  Consecutive to
                 Count I


III  Ch. of 18/924(b)  Interstate Transport
                       of firearm Re:
→ Can run                Crime of Violence
currnt                 MO - LA - MS.
or
CONS.   10 years/ Not Consecutive


———————————————————————————

SWAG - 972 days  Credit for Good
                 behavior –
                 under 18/ 3624(b)


Frye MUST at a minimum
        ✓ waive all Post Conviction
          relief /Hyde Amendment/
✗         appeals
-Fed R. Crim.Pro
-Rule 11(c)(1)(B)   ✓ Adheres to the
                    factual Basis –

Billy Cooper

I count of 18/922(g)(1) and section 2 – Felon in Possession –
Recommend/agrees Recommend to 10 years

II Count of 18/924 (c)(1)(A) use of a Firearm re: crime of violence – State Murder of Willie Earl Hatten
Recommend/agree to 10 years Consecutive to count I

III Count of 18/924 (c)(1)(A) use of a Firearm re: Crime of violence – State Murder/Kiddnapping of Lottie Marshall
Recommend/agree to 10 years Consecutive to Count I and Count II

~~IV Count of 18/922 (g)(1)~~

IV count 18/924 (B) Transporting/Receiving in interstate Commerce Knowing Firearm/used in Crime of violence (Kidnapping under fed Statute) Miss. La. MS.

agree/Recommend 10 Year Consecutive to Cts I, II, & III

V. Count 18/2312 - Dyer act
~~Interstate~~ Interstate
18/751    transportation of
Escape    stolen vehicles
by yr      (transport ms - La - ms
           of Cottie Marshall:
           Vehicle.)

10 years - 
           Concurrent / Consecutive
                    ?
                    ?

✓ Waiver post conviction Relief -
  NO. Habeas Corpus
  NO  Appeal of Sentence
  NO  Claim against officers
      of US Hegel

— Plea agreement isn't binding
       on Court  Rule II(e)(1)(B)

✓ Allocute to own factual
       basis -

✗ Note Provisions of 18/3624(6)
  Credit toward Sentence for Satisfactory
  behavior. Days deducted? at ___

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

JAMES E. FRYE,
        Petitioner,

vs.                          Docket No.: 4:01-CR-8-2-BN

UNITED STATES OF AMERICA,
        Respondent.
_____/

### SWORN AFFIDAVIT
### JAMES FRYE

COMES NOW, Petitioner, James Frye pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746, with this his Sworn Affidavit in Support of Motion to Vacate Conviction pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1. I am the Petitioner in the above captioned cause.

2. I was represented by Attorneys Bobby Shoemaker in the original State proceedings.

3. During the pre-trial preparation of the State of Mississippi case, I discussed the possibility of resolving the matter via plea negotiations with my State appointed attorney Mr. Shoemaker.

4. My prior attorney Mr. Shoemaker, was to inquire with the State and Federal authorities if there was the possibility of resolving the charges via a plea agreement.

# B

5. I never did receive a response from Mr. Shoemaker on the issue of the plea agreement nor did he ever advise me that he had taken it upon himself to reject any plea agreement whatsoever.

6. I know that there was a plea agreement of LIFE incarceration offered by the AUSA of this case *after* this case was transferred to and prosecuted by the federal government.  That plea offer of LIFE was properly rejected.

7. I never authorized Mr. Shoemaker to make any decisions relating to the acceptance or rejecting of any plea agreement on my behalf.

8. It was not until I was able to review the (2) boxes of documents that my family just received from my appellate counsel that I was able to locate inside of an envelope, a copy of a letter that my attorney Mr. Shoemaker had written to the State prosecutor Bowen and to AUSA Barrett rejecting a plea offer of 20 years with a concurrent 20 year offer by AUSA Barrett. (See Appendix – A, Title 28 USC § 2255) In another file, I found a fax from the AUSA Barrett that was sent to Defendant Cooper's attorney that offered to resolve my case without the LIFE incarceration and without the death penalty. The letter was a photocopy of a document that was faxed and was written in AUSA Barrett's own handwriting, offering me a total of 20 years incarceration concurrent to the State of Mississippi's offer.

9. I was furious when I saw those documents as I would have accepted the plea of 20 years  without hesitation to resolve the matter.

10. I never knew of that plea offer had been made in either case.

11. At all stages of my case, I was never told that a plea offer, except for the one that I rejected of LIFE incarceration was ever offered by any of the parties involved.

12. I relied on my attorney's advice before I made any of my decisions; however, I was never given any advice to reject any plea offer except the one that I personally rejected from the Federal Government, which was the LIFE incarceration offer *not* the earlier 20 year offer.

13. During the suppression hearing I wanted to testify to explain to the court that the statements on the tape were coerced since I was paid $ 1500.00 dollars and promised "a bus ticket home" if I made the statement.  The statements were made at the direction of the State Detectives that wanted me to implement Cooper in the crime and to testify against him at his trial.

14. I did not testify during the suppression hearing at the direction of my attorney's that the testimony would be used against me as a guilt determination and not for impeachment purposes.

15. Had I known that my testimony during the suppression hearing would only be used for impeachment purposes and not for a finding of guilt, I would have testified truthfully that the tape was made at the behests of the State Detectives after I was promised a bus ticket home and given $ 1500.00 to make the tape and implement Cooper in the crime.

16. I explained this to my attorneys, however, they still advised me that if I testified during the suppression hearing, that my testimony could be used to establish my guilt in the crime.

17. I relied in all respects on my attorneys advise and always assumed they were correct.

Done this ___5___, day of January 2009 under penalty of perjury pursuant to Title 28 U.S.C. § 1746.

James Frye
Reg. # 98362-024
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808

## AFFIDAVIT OF BILLY DEWAYNE COOPER

I, Billy Dewayne Cooper, do hereby certify that I am competent to state the matters included in this affidavit, have kowledge of the facts contained herein and declare that to the best of my knowledge  that the statements contained in this affidavit are True, Correct, Certain, Complete and not meant to mislead and hereby make these statements of facts in accordance with the laws of the United States under penalty of perjury pursuant to {Title 28 U.S.C. § 1746 (1).

1. On or about late January and early Febuary of 2005, I was brought back to the Madison County Detention Center pursuant to a court order issued by Judge Barbour at the request of Mr. Frye and his attorneys, for the purpose of testifying to the facts that occured on or about April 13, 1999.

2. While at madison County Detention Center I received at least two legal visits from Mr. Frye's attorney Cynthia Stewart, and around that time the court appointed counsel Dennis Joiner from the Federal public defenders office to represent me during the proceedings.

3. Instead of testifying to the things I knew to be true which occured on or about April 13th, 1999, (murders of Marshall and Hatten) I was instructed specifically to not testify but to plead the fifth. This specific instruction was given to me repeatedly by Mr. Frye's attorney Cynthia Stewart during the legal visits at Madison County Detention Center and at the James O. Eastland Federal courthouse immediatedly prior to my taking the witness stand to testify.

4. I questioned my appointed counsel, Dennis Joiner about how not testifying to the facts, (which I felt would be helpful to Mr. Frye's case) would be a benefit to either Mr. Frye or myself. I was told by Dennis joiner that my pleading the fifth was what Mr. Frye's attorney Cynthia Stewart had specifically requested and because Stewart was in charge of Frye's defense and an expierenced trial lawyer that she in effect knew what she was doing.

5. The testimony that I was instructed not to give has been documented in an affidavit drafted earlier this year and had it not been for the specific instruction given to me by Mr. Frye's attorney Cynthia Stewart during her legal visits with me, and by my court appointed attorney Dennis Joiner during his legal visits with me, as well as the instruction given to me by both Cynthia Stewart and Mr Joiner when they were together with me, this would have been the testimony given by me on the witness stand during my early 2005 appearance during Mr. Frye's trial.

SIGNED UNDER PENALTY OF PERJURY on this the 4 $^{ST}$ date of MAY 2008

_Billy D Cooper_



Billy Dewayne Cooper

## AFFIDAVIT OF BILLY
## DEWAYNE COOPER

I, Billy Dewayne Cooper, do hereby certify that I am competent to state the matters included in this affidavit, have knowledge of the facts contained herein and declare that to the best of my knowledge that the statements contained in this affidavit are True, Correct, Certain, Complete, and not meant to mislead and hereby make these statements of facts in accordance with the laws of the United States under penalty of perjury pursuant to [Title 28 U.S.C. § 1746(1)].

1. I have known Mr. Frye since late 1994 and since that time I have never known Mr. Frye to be a violent person, or witnessed Mr. Frye causing any person to suffer any type of bodily or physical harm.

2. I have never witnessed or known of Mr. Frye to have any type of firearm in his possession.

3. The description of the events that took place on the oil field made by Mr. Frye in a videotaped statement for L. P.D Investigator Tyrone Stewart are not the events I witnessed and do not accurately describe what actually took

Place that night.

4. At the time of the shooting, Mr. Frye was seated in my Lexus Coupe on a gravel road adjacent to an oil rig 75 yards from the entrance



which allowed access to the main oil field road, where the victim Hatten

and Marshall had parked Marshall's Toyota directly behind Vanessa

Grafton's vehicle which I was driving that night.

5. As Hatten and Marshall and I stood talking beside the parked cars,

someone came from the main oil field road shooting.  The shooter was

firing a weapon from the direction of the main oil field read because it was

dark, and we were in an unlighted oil field I could not see well enough to

identify the shooter. The shooter shot at least 8 or 9 shots and both Hatten

and Marshall were shot and killed.

6. I lay on the ground as if I were shot and killed until I heard the

shooter run back towards the main oil field road, shut a door and drive off.

As I head the sound of the shooters vehicle rolling over the loose gravel on

the main oil field road moving further away I began to look around me.

7. Mr. Frye could be heard calling my name from near the Lexus as

he approached from the opposite direction asking if I was ok? And who was

shooting? And other questions but stopped asking questions abruptly when

he got close enough to see that both Hatten and Marshall had been shot

and killed.

8. Mr. Frye was supposed to be watching my back and making sure

nobody came and waited as Hatten and I talked. Frye said nobody had

came since I had left him there because the only car lights Mr. Frye saw

approaching the oil site entrance or even traveling on the main oil field road

had been Vanessa's mothers car I was driving and the Toyota Hatten was

driving that had parked behind the car I drove.

9. Mr. Frye said that whoever had been shooting had got behind

Hatten's car as he followed my car on the main oil field road and was

blocked from Mr. Frye's view by Hatten, Marshall and myself as the person

was shooting. But after we fell and the shooter kept firing his weapon Mr.

Frye ducked down in the Lexus because the shooter was still firing in Mr.

Frye's direction. Even though Mr. Frye was seated in the Lexus at least 75

yards away, Mr. Frye felt that he could still be shot by stray bullets, so he was

was unable to identify the shooter.

10.   Mr. Frye repeatedly asked me who the shooter was, because

from where he sat it was impossible for Mr. Frye to see the shooter clearly.

When added to the fact that we were between the shooter, then Flatten,

Marshall and. myself then another 60 to 75 yards to Mr. Frye it was virtually

impossible for Mr. Frye to make a statement claiming to know the Identity

of the shooter, especially when I being much closer wearing glasses

couldn't clearly make out the shooter features.

11.   After Mr. Frye helped me pull the victims off the gravel oil site road about 15 feet past the end of the clearing, Mr. Frye was able to drive off the oil site road and Mr. Frye left in the Lexus and I left In Vanessa's mothers car.

12.   Before coming back to move the victims car I spoke to Mr. Frye In Laurel and he felt sure the sounds he heard was that of a small engine pickup truck which the shooter used to drive away in after committing that violent act. I having had time to think, I remembered catching just a glimpse of a medium built black man, with his hair braided in short plats but I only had a split second before seeing the gun and the shooter started firing. The shooter resembled one of the men I saw earlier that day with Hatten who was supposed to be from New Orleans.

13.   There was never any victim transported in the trunk of any vehicle, alive or deceased, and no visit to any outdoor car wash to clean any vehicles, in fact it was raining that night. To wash a car in the rain would have been not only suspicious but irrational and remembered by anyone who saw this taking place. There has never been any witness that can confirm any of these so called facts of the case because these things did not happen.

14. The original videotaped statement made by Mr. Frye was truthful and because Mr. Frye didn't see the shooter he (Frye) gave Tyrone Stewart the description of the shooter I had described to Mr. Frye. However Investigator Stewart chose to force Mr. Frye to locate the shooter instead of using the resources of his position as Laurel Police Dept. Investigator to locate the shooter.

15. Mr. Frye went to Slidell, LA and New Orleans Louisiana at my expense to try and locate the shooter but was unsuccessful. After I went to pick Mr. Frye up and were driving back to Laurel Mr. Frye suggested we tell Investigator Stewart what we knew and where the victims (who were buried at this time) were located. I strongly disagreed knowing Tyrone Stewart would not search for the shooter but look instead for easiest person to pin the murders on; whoever was easiest to make a case against. Dislike for me made it clear to me that I would be looked at as the guilty person especially since Tyrone Stewart had already spread the information around the laurel Community that I was the last person to be seen with Mr. Hatten and Ms. Marshall.

16. After Mr. Frye and I had been arrested In mid August 1999 L.P.D Investigator Tyrone Stewart took me into his office and allowed me to view a videotaped statement made for Tyrone Stewart by Mr. Frye, in

which Mr. Frye stated that he saw me shoot Hatten then kidnap Marshall only to shoot Marshall as she helped hide Hatten's body. This statement made by Mr. Frye was a totally false account of the events that took place that night. Investigator Stewart attempted to force; intimidate and coerce me to take a guilty plea, which Stewart said, would stop me from getting the death penalty. Investigator Stewart said he didn't want to use Mr. Frye's videotape statement but if I didn't take a guilty plea, before Mr. Frye helped them recover the bodies he would be forced to use the video statement as evidence, which would guarantee that I received the death penalty. I refused to plea guilty.

17.    Knowing that Mr. Frye was using crack cocaine regularly I knew that for Mr. Frye to make such a false statement, Investigator Stewart had to have offered Mr. Frye another deal possibly involving money this time so I asked Investigator Stewart how much did it cost him to get Mr. Frye to lie like that. Investigator said whatever the amount was it was worth it because be had me now and I couldn't get away this time, so he considered it money well spent.

18.    I saw Mr. Frye later and told him that whatever deal he made with Investigator Stewart would eventually backfire because if he (Frye) knew Tyrone Stewart like (I knew Tyrone Stewart) he wasn't to be trusted.

19.   Jasper County took over the case, and I made a video statement for State Highway Patrol Investigator Raymond where I did my best to tell the same lie Mr. Frye had said for Tyrone Stewart only switching our roles to put the blame on Mr. Frye, even though It was just as false as Mr. Frye's statement for Tyrone Stewart, I was not offered any money to make that statement.

20.   While being held in the Jasper County Jail preparing for my State Trial my Lawyer, informed me that the capitol charge and all charges related to the murdered couple were no longer being pursued by the DA's Office against Mr. Frye. It was then that Mr. Frye told me he was never going to sit on the stand in any court and testify to the false statement he made for Tyrone Stewart. Mr. Frye went on to tell me the details of the deal Tyrone Stewart made with him to pay cash 2500.00 and a ticket home in exchange for making a false statement created by Tyrone Stewart so he would have enough leverage and evidence to force me to accept a guilty plea, and to help Stewart locate the missing victims.

21.   After the federal court took over the case my appointed Lawyers were given a letter Mr. Frye wrote detailing the deal that was made with him by Tyrone Stewart assuring the Lawyers Holliman and Yaraboro that if they put Mr. Frye on the witness stand that he would testify

about the deal and admit that he did not see me shoot the victims. My Lawyers didn't believe that Frye would testify to those facts, so as they came for a legal visit Mr. Frye saw them in the Madison County Jail and assured them he would indeed testify to what he had wrote in the letter to them.

22.    My Lawyers Holliman and Yaraboro provided me with ineffective assistance of Counsel by not doing whatever was necessary to have Mr. Frye testify during my trial and not introducing the letter I gave them that Mr. Frye wrote detailing the deal he had with Tyrone Stewart as exculpatory evidence. I had no defense for Tyrone Stewart lies and was easily found guilty.

23.    Investigator Stewart had used lies, threats, and intimidation to keep the facts surrounding his deal with Mr. Frye and his Illegal investigative tactics from becoming part of the court record Tyrone Stewart even used Mr. Frye's statement against Mr. Frye, when Mr. Frye trusted and was helping Tyrone Stewart. By not admitting that the statement made by Mr. Frye was false and created by the use of coercion intimidation and misled trust. Investigator Stewart is manipulating the state and federal courts and is now attempting to have those most effected by his illegal acts

sience by the death penalty or a life of imprisonment, this criminal act after being accomplished under color of law must not remain covered up.

24.   Using a false statement he created, Investigator Stewart has allowed the illusion of single handedly solving a double-murder be credited to himself, enjoying the commendations and promotions that came with such a successful appearing amount of police work. Because I believe as the bible says that things done undercover of darkness will eventually come to the light. I have submitted this affidavit to assist in opening the blinds that will shed much needed light on the unlawful, and very unconscionable actions of the Governments main material witness, and How his actions have stained the Image of Justice provided by the Courts that allow his actions to go unchecked, eventually providing an embarrassment to any Jurisdiction allowing these type of illegal acts to continue to exist.

25. I would be willing to testify to any and all of the statements of fact Included in this affidavit in any court proceeding that would look Into this matter in the interest of Justice. This affidavit was drafted for the sole purpose of making these facts known and to allow Justice to be administered fairly in these matters.

I, Billy Dewayne Cooper, do hereby certify that the statements contained in this affidavit, were voluntarily submitted, without coercion, and

are True, Correct, Complete, Certain, and not meant to mislead submitted in accord with the laws of the United States under penalty of perjury pursuant t9 [Title 28 U.S.C. § 1746(1)].

_Billy D Cooper_

_____

Billy Dewayne Cooper

Subscribed and sworn to before me, a Notary Public, on this __20__ day of MARCH, 2008 who's identity is well known or proved to me, signed and sealed the foregoing affidavit, and acknowledged the same to be his free act and deed.

Notary Public ,
AUTHORIZED BY THE ACT OF
JULY 7, 1955, AS AMENDED,
My Commission Expires
TO ADMINISTER OATHS
18 U.S.C. 4004